# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

JANE DOES 1–6, JOHN DOES 1–3, JACK DOES 1–1000, JOAN DOES 1–1000,

Plaintiffs–Appellants

*v.*

JANET T. MILLS, in her official capacity as Governor of the State of Maine, JEANNE M. LAMBREW, in her official capacity as Commissioner of the Maine Department of Health and Human Services, NIRAV D. SHAH, in his official capacity as Director for the Maine Center for Disease Control and Prevention, MAINEHEALTH, GENESIS HEALTHCARE OF MAINE, LLC, GENESIS HEALTHCARE, LLC, NORTHERN LIGHT HEALTH FOUNDATION, MAINEGENERAL HEALTH,

Defendants–Appellees.

On Appeal from the United States District Court for the District of Maine
In Case No. 1:21-cv-242-JDL before The Honorable John D. Levy

## PLAINTIFF-APPELLANT'S EMERGENCY MOTION
### FOR INJUNCTION PENDING APPEAL
### RELIEF NEEDED BEFORE FRIDAY, OCTOBER 15

Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854 - (407) 875-1776
court@LC.org - hmihet@LC.org
rgannam@LC.org - dschmid@LC.org
*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………...……………………………ii

TABLE OF AUTHORITIES……………………………..……………………..iii

RELIEF SOUGHT…………………………………………….………………1

JURISDICTION AND TIMING…………………………………………...2

URGENCIES JUSTIFYING EMERGENCY RELIEF…………………………3

LEGAL ARGUMENT……………………………………………………...9

I.    DEFENDANTS' INTENTIONAL REMOVAL OF RELIGIOUS EXEMPTIONS FROM THE VACCINE MANDATE WHILE ALLOWING MEDICAL EXEMPTIONS VIOLATES THE FIRST AMENDMENT……………………………………………………9

    A.    Maine's Singling Out of Religious Employees Who Decline Vaccination for Especially Harsh Treatment Is Not Religiously Neutral…………………………………………………...9

    B.    The Vaccine Mandate's More Favorable Treatment of Employees Declining Vaccination for Secular, Medical Reasons as Compared to Employees Declining Vaccination for Religious Reasons Is Not Generally Applicable………………………..10

    C.    Maine's Discriminatory Treatment of Religious Exemptions Is Subject to and Cannot Withstand Strict Scrutiny Because Maine Stands Alone In Its Blanket Refusal to Extend Religious Accommodations and Its Mandate is Not the Least Restrictive Means………………………………………………………..14

II.    PLAINTIFFS ARE SUFFERING IRREPARABLE HARM………………19

III.    PLAINTIFFS SATISFY THE OTHER IPA REQUIREMENTS…………..21

CONCLUSION………………………………………………………...22

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Agudath Israel of Am. v. Cuomo*, 983 F.3d 620 (2d Cir. 2020)……………………18

*Ashcroft v. ACLU*, 542 U.S. 656 (2004)………………………………………..19

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016)…………………………18

*Cunningham v. City of Shreveport*, 407 F. Supp. 3d 595 (W.D. La. 2019)……….14

*Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945,
2021 WL 4618519 (6th Cir. Oct. 7, 2021)……………………………………*passim*

*Dr. A v. Hochul*, No. 1:21-CV-1009,
2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021)……………………………..*passim*

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015)…………………5

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*,
170 F.3d 359 (3d Cir. 1999)………………………………………....…10, 11, 12, 13

*Litzman v. N.Y. City Police Dep't*, No. 12 Civ. 4681(HB),
2013 WL 6049066 (S.D.N.Y. Nov. 15, 2013)……………………………………..13

*Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020)………...14

*McCullen v. Coakley*, 134 S. Ct. 2518 (2014)……………………………………..18

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)…...7, 8, 9, 20

*Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1 (1st Cir. 1987)……………..21

*Sindicator Puertorriqueno de Trabajaddores v. Fortuno*,
699 F.3d 1 (1sr Cir. 2012)………………………………………………………….20

*Singh v. McHugh*, 185 F. Supp. 3d 201 (D.D.C. 2016)……………………………13

*South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021)…………9

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021)……………………….…..9, 14, 15, 20

*Ward v. Polite*, 667 F.3d 727 (6th Cir. 2012)………………………………………13

*Westchester Legal Servs., Inc. v. Westchester Cnty.*,
607 F. Supp. 1379 (S.D.N.Y. 1985)……………………………………………..20

*We The Patriots USA, Inc. v. Hochul*, No. 21-2179,
dkt. 65 (2d Cir. Sept. 30, 2021)……………….……………………………5, 6

## STATUTES

1st Cir. Local Rule 27.0…………………………………………………..1, 3

Fed. R. App. P. 8………………………………………………………………1

## RELIEF SOUGHT

**State Defendants changed the deadline to become fully vaccinated to October 29, 2021, which requires Plaintiffs to accept a vaccination that violates their sincerely held religious beliefs by no later than Friday, October 15, 2021**. The relief sought in the instant Motion is needed before **this Friday** to protect Plaintiffs' cherished First Amendment liberties and prevent irreparable harm. Plaintiffs have moved expeditiously and with extreme urgency, filing their notice of appeal within 1 hour of the district court's denial of injunctive relief, and filing this motion in this Court on the very next morning, within a few minutes of the appeal being docketed.

Plaintiffs-Appellants JANE DOES 1–6, JOHN DOES 1–3, JACK DOES 1–1000, JOAN DOES 1–1000, ("Plaintiffs") on an emergency basis, hereby move the Court, pursuant to Fed. R. App. P. 8(a)(2) and 1st Cir. Local Rule 27.0(b), for an injunction pending appeal (IPA) of the district court's October 13, 2021 Order on Plaintiff's Motion for Preliminary Injunction ("PI Order," attached as **EXHIBIT 1**), which is the subject  of Plaintiffs' Notice of Appeal to this Court (attached as **EXHIBIT 2**), restraining and enjoining Defendants–Appellees, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to

enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that

    i.    Defendant Governor Mills will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

    ii.    Defendants will immediately cease in their refusal to consider, review, and grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting; and

    iv.    Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs.

## JURISDICTION AND TIMING

Plaintiffs filed this action on August 25, 2021 (**EXHIBIT 3**, Verified Complaint), and immediately moved for preliminary injunctive relief. (Dkt. 3). Over Plaintiffs' objections, the Court delayed a hearing until September 5, 2021. (Dkt.

44). The Court then held Plaintiffs' motion under advisement for more than three weeks. On October 13, 2021, the district court finally denied Plaintiffs' Motion for Preliminary Injunction, holding that Plaintiffs were unlikely to succeed on the merits of their challenge to the Governor's COVID-19 Vaccine Mandate (PI Order at 14). Plaintiffs noticed their appeal to this Court on the same day, within one hour of the PI Order. (Ex. 2.) In conjunction with Plaintiffs' Motion for Preliminary Injunction and pursuant to Fed. R. App. P. 8(a)(1)(C), Plaintiffs also requested alternative relief in the form of an injunction pending appeal should the court deny the preliminary injunction. (**EXHIBIT 4**, Motion for Temporary Restraining Order, Preliminary Injunction, and Injunction Pending Appeal, "PI Motion"). The district court also denied Plaintiffs'. Motion for Injunction Pending Appeal. (Dkt. 68, "IPA Denial," attached hereto as **EXHIBIT 5**.) By presenting the instant Emergency Motion for IPA with this Court on the very next morning after the district court's denial of Plaintiffs' IPA, and within minutes of this Court' docketing of this appeal, Plaintiffs present this request "promptly" in satisfaction of 1st Cir. Local Rule 27.0(b).

## <u>URGENCIES JUSTIFYING EMERGENCY RELIEF</u>

The seminal issue before this Court can be boiled down to a simple question: Does federal law apply in Maine? Though the question borders on the absurd, so does Defendants' answer to it. Defendants have explicitly claimed to healthcare workers in Maine, including Plaintiffs, that federal law does not apply, and neither

should they. Defendants have informed Plaintiffs, who have sincerely held religious objections to the Governor's mandate that all healthcare workers in Maine must receive a COVID-19 vaccine by October 29, 2021 (the "**COVID-19 Vaccine Mandate**"), and that no protections are given to religious beliefs in Maine. Indeed, Defendants' answer has been an explicit claim that federal law does not provide protections to Maine's healthcare workers. When presented with requests from Plaintiffs for exemption and accommodation for their sincerely held religious beliefs, Defendants have responded in the following ways:

- "I can share MaineHealth's view that **federal law does not supersede state law in this instance**." (V. Compl. ¶87 (emphasis added).)

- "**[W]e are no longer able to consider religious exemptions for those who work in the state of Maine**." (V. Compl. ¶84 (bold emphasis original).)

- "All MaineGeneral employees will have to be vaccinated against COVID-19 by Oct. 1 unless they have a medical exemption. The mandate also states that only medical exemptions are allowed, **no religious exemptions are allowed**." (V. Compl. ¶93 (emphasis added).)

- "Allowing for a religious exemption would be a violation of the state mandate issued by Governor Mills. So, unfortunately, that is not an option for us." (V. Compl. ¶94.)

The dispute in this case is not about what accommodations are available to Plaintiffs or whether accommodation of Plaintiffs' sincerely held religious objections can be conditioned on compliance with certain reasonable requirements.

Plaintiffs have already acknowledged to Defendants that they are willing to comply with reasonable health and safety requirements that were deemed sufficient for the last 18 months. (V. Compl. ¶¶79-81.) **The dispute is about whether Defendants are required to even consider a request for reasonable accommodation of Plaintiffs' sincerely held religious beliefs**. The answer is clear: **yes**. As the Northern District of New York has just held when it enjoined New York's very similar scheme: "'**Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation**.'" *Dr. A v. Hochul*, No. 1:21-CV-1009, 2021 WL 4734404, *9 (N.D.N.Y. Oct. 12, 2021) (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775-776 (2015)) (emphasis added). Indeed, the court in *Dr. A* plainly held that plaintiffs were likely to succeed on the merits of their claims because – as here – the Governor's mandate "has effectively foreclosed the pathway to seeking a religious accommodation that is guaranteed under Title VII." *Id.* at *6. And this Court should require Defendants to acknowledge and accept that federal law mandates accommodation for Plaintiffs' sincerely held religious beliefs and order that Defendants extend such protections.

On September 30, 2021, the Second Circuit gave its imprimatur to the *Dr. A.* TRO against State Defendants in *We The Patriots USA, Inc. v. Hochul*, No. 21-2179,

dkt. 65 (2d Cir. Sept. 30, 2021). There, the Second Circuit issued an injunction pending appeal against the Governor's COVID-19 Vaccine Mandate, ordering that the New York State Defendants are enjoined from enforcing their mandate.

On October 7, 2021, the Sixth Circuit issued an order affirming a preliminary injunction against Western Michigan University for its similar refusal to grant requested religious accommodations from a mandatory COVID-19 vaccine policy. *See Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021). In denying the university's request for a stay, the Sixth Circuit concluded that the student athletes' "free exercise challenge will likely succeed on appeal." *Id. at* *1. Specifically,

> **the University's failure to grant religious exemptions to plaintiffs burdened their free exercise rights**. The University **put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports**. . . . **By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights**.

*Id.* at *3 (emphasis added).

The court continued,

> **But the mandate does penalize a student otherwise qualified for intercollegiate sports by withholding the benefit of playing on the team should she refuse to violate her sincerely held religious beliefs. As a result, plaintiffs have established that the University's vaccination policy for student-athletes burdens their free exercise of religion.**

*Id.* (emphasis added).

6

As here, the university offered medical exemptions and, theoretically, religious exemptions to its student-athletes, but refused to provide religious accommodations. *Id.* at *1. The Sixth Circuit found that such a discriminatory scheme of individualized exemptions made the vaccine mandate not neutral or generally applicable. *Id.* at *4. That alone was sufficient to mandate the application of strict scrutiny under *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020), which is a point Plaintiffs have pressed in this case.

If Plaintiffs do not comply with the vaccine mandate **by tomorrow**, they will be terminated and deprived of their ability to feed their families. **Plaintiffs are facing a deadline to become fully vaccinated to October 29, <u>which requires Plaintiffs to accept a vaccination by no later than Friday, October 15</u>. Relief cannot wait another day.**

Plaintiffs are all healthcare workers in Maine who have sincerely held religious beliefs that preclude them from accepting any of the COVID-19 vaccines because of the vaccines' connections to aborted fetal cell lines and for other religious reasons that have been articulated to Defendants. (V. Compl. ¶50-74.) Since COVID-19 first arrived in Maine, Plaintiffs have risen every morning, donned their personal protective equipment, and fearlessly marched into hospitals, doctor's offices, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other

illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. **All Plaintiffs seek in the instant matter is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for the last 18 months**. Defendants shamelessly seek to throw these healthcare workers out into the cold and ostracize them from the very medical facilities for which they have sacrificed so much solely because of Plaintiffs' desire to continue to provide quality healthcare while still exercising their sincerely held religious beliefs.

**Federal law demands that these Plaintiffs and all employees in Maine receive protections for their sincerely held religious beliefs**. This Court should hold Maine to the bargain it made with its citizens when it joined the union and ensure that Maine extends the required protections that federal law demands. As the Supreme Court held just last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). When we have demanded so much of our healthcare heroes, we owe them nothing less than the full measure of our own commitment to constitutional principles. Anything less would be desecrating the

sacrifice these medical heroes made for untold numbers of people—including Defendants—when the call of duty demanded it of them. For, indeed, "**[e]ven in times of crisis—perhaps** *especially* **in times of crisis—we have a duty to hold governments to the Constitution**." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Gorsuch, J.) (bold emphasis added).

## LEGAL ARGUMENT

I.  **DEFENDANTS' INTENTIONAL REMOVAL OF RELIGIOUS EXEMPTIONS FROM THE VACCINE MANDATE WHILE ALLOWING MEDICAL EXEMPTIONS VIOLATES THE FIRST AMENDMENT.**

   A.  **Maine's Singling Out of Religious Employees Who Decline Vaccination for Especially Harsh Treatment Is Not Religiously Neutral.**

   "**[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat** *any* **comparable secular activity more favorably than religious exercise**." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (bold emphasis added). In fact, "the regulations cannot be viewed as neutral because they single out [religion] for especially harsh treatment." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020). "**When a state so obviously targets religion for differential treatment, our job becomes much clearer**." *South Bay*, 141 S. Ct. at 717 (Gorsuch, J.) (emphasis added).

Here, Maine has plainly singled out religious employees who decline vaccination for especially harsh treatment (*i.e.*, depriving them from earning a living anywhere in the State), while favoring employees declining vaccination for secular, medical reasons. Under the *Tandon*, *South Bay*, and *Catholic Diocese* triumvirate, Government Defendants' discriminatory treatment of unvaccinated religious employees violates the First Amendment. Under the prior version of Maine's immunization exemption requirements, Maine allowed for (a) medical exemptions, and (b) exemptions for any employee who "states in writing an opposition to immunization because of a sincerely held religious belief." (V. Compl. ¶ 48.) On August 14, 2021, however, Maine removed **only the religious exemption from the rule**. (V. Compl. ¶46.) Indeed, where – as here – the government has removed a previously available religious exemption, that "intentional change in language is the kind of 'religious gerrymander' that triggers heightened scrutiny." *Dr. A v. Hochul*, No. 1:21-cv-1009, 2021 WL 4734404, *8 (N.D.N.Y. Oct. 12, 2021).

> **B. The Vaccine Mandate's More Favorable Treatment of Employees Declining Vaccination for Secular, Medical Reasons as Compared to Employees Declining Vaccination for Religious Reasons Is Not Generally Applicable.**

Maine's continuing recognition of only medical exemptions also removes the Vaccine Mandate from neutrality and general applicability. As *Dr. A* held this week, where the government permits medical exemptions from the mandate, but excludes religious exemptions, the law is not neutral. 2021 WL 4734404, at *8. In *Fraternal*

*Order of Police Newark Lodge No. 12 v. City of Newark*, Justice (then-Judge) Alito wrote unequivocally for the court that "**[b]ecause the Department makes exemptions from its [no beards] policy for secular reasons and has not offered any substantial justification for refusing to provide similar treatment for officers who are required to wear beards for religious reasons, we conclude that the Department's policy violates the First Amendment**." 170 F.3d 359, 360 (3d Cir. 1999) (emphasis added). There, like Maine here, the city argued that it was required to provide medical accommodations under federal law but that religious exemptions were not required. *Id.* at 365. The court squarely rejected that rationale: "It is true that the ADA requires employers to make reasonable accommodations for individuals with disabilities. However, **Title VII of the Civil Rights Act of 1964 imposes an identical obligation on employers with respect to accommodating religion.**" *Id.* (emphasis added) (cleaned up). Thus, the court held, "**we cannot accept the Department's position that its differential treatment of medical exemptions and religious exemptions is premised on a good-faith belief that the former may be required by law while the latter are not**." *Id.* (emphasis added).

Here, the district court found that the availability of medical exemptions, while religious exemptions were specifically targeted and excluded, does not violate the First Amendment because the two are not comparable. (PI Order at 19.) Justice Alito squarely rejected that contention:

We also reject the argument that, because the medical exemption is not an "individualized exemption," the *Smith* /*Lukumi* rule does not apply. While the Supreme Court did speak in terms of "individualized exemptions" in *Smith* and *Lukumi,* **it is clear from those decisions that the Court's concern was the prospect of the government's deciding that secular motivations are more important than religious motivations. If anything, this concern is only further implicated when the government does not merely create a mechanism for individualized exemptions, but instead, actually creates a categorical exemption for individuals with a secular objection but not for individuals with a religious objection**.

*Fraternal Order of Police*, 170 F.3d at 365 (emphasis added) (cleaned up). The same is true here. Maine maintained a policy that permitted religious exemptions and medical exemptions to mandatory vaccinations. (V. Compl. ¶ 48.) Then, Maine specifically removed religious exemptions while maintaining medical exemptions. (V. Compl. ¶¶ 46–47.) And, that discriminatory removal of a religious exemption while maintaining a medical exemption violates the First Amendment. 170 F.3d at 365 ("**Therefore, we conclude that the Department's decision to provide medical exemptions while refusing religious exemptions is sufficiently suggestive of discriminatory intent so as to trigger heightened scrutiny under *Smith* and *Lukumi*.**" (emphasis added)).

Here, Maine claims secular, medical reasons for declining vaccination are important enough to overcome its interest in ensuring high vaccination rates but that religious reasons for declining vaccination are not. Such a value judgment does not legitimize a discriminatory policy:

> **[T]he medical exemption raises concern because it indicates that the Department has made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not. As discussed above, when the government makes a value judgment in favor of secular motivations, but not religious motivations, the government's actions must survive heightened scrutiny.**

170 F.3d at 366 (emphasis added). Essentially, as here, "**[w]e thus conclude that the Department's policy cannot survive any degree of heightened scrutiny and thus cannot be sustained.**" *Id.* at 367 (emphasis added).

The Northern District of New York's decision in *Dr. A*, and Justice Alito's opinion for the court in *Fraternal Order of Police* hardly represent a novel proposition. As the Sixth Circuit explained, "**a double standard is not a neutral standard**." *Ward v. Polite*, 667 F.3d 727, 740 (6th Cir. 2012) (emphasis added). As many courts have recognized, allowing medical exemptions while prohibiting religious exemptions is unconstitutional. *See, e.g.*, *Litzman v. N.Y. City Police Dep't*, No. 12 Civ. 4681(HB), 2013 WL 6049066, *3 (S.D.N.Y. Nov. 15, 2013) (holding that a policy that permits medical exemptions but not religious exemptions is neither neutral nor generally applicable and must be subject to strict scrutiny); *Singh v. McHugh*, 185 F. Supp. 3d 201, 225 (D.D.C. 2016) ("In sum, it is difficult to see how accommodating plaintiff's religious exercise would do greater damage to the Army's compelling interests in uniformity, discipline, credibility, unit cohesion, and training than the tens of thousands of medical shaving profiles the Army has already

granted."); *Cunningham v. City of Shreveport*, 407 F. Supp. 3d 595, 607 (W.D. La. 2019) (allowing medical exemptions while precluding religious exemptions removes law from neutrality and general applicability). Maine's discriminatory retention of medical exemptions while excluding religious exemptions must be subjected to, and cannot withstand, strict scrutiny. Put simply, "**restrictions inexplicably applied to one group and exempted from another do little to further [the government's] goals and do much to burden religious freedom**." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020) (emphasis added).

> C. **Maine's Discriminatory Treatment of Religious Exemptions Is Subject to and Cannot Withstand Strict Scrutiny Because Maine Stands Alone In Its Blanket Refusal to Extend Religious Accommodations and Its Mandate is Not the Least Restrictive Means.**

Even assuming *arguendo* that imposing a mandatory COVID-19 vaccination requirement on healthcare workers in Maine while excluding religious exemptions is supported by a compelling government interest, the Vaccine Mandate still fails strict scrutiny because it is not the least restrictive means of achieving the government's interest. As the Supreme Court said in *Tandon*,

> narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. **Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities**

**even when the same precautions are applied.** Otherwise, precautions that suffice for other activities suffice for religious exercise too.

141 S. Ct. at 1296–97 (emphasis added). Now that New York's unconstitutional exemption regime has been judicially enjoined, every other state has demonstrated that preventing the spread of COVID-19 and encouraging vaccination of patient-facing healthcare workers can still be achieved while protecting the sincerely held religious beliefs of conscientious objectors. **These states have found a way to accommodate religion under the same alternative protective measures Plaintiffs request here. Maine stands alone** in its refusal to recognize this truth.

In *Dr. A*, the court held that failure to explain "why they chose to depart from similar healthcare vaccination mandate issued in other jurisdictions that include the kind of religious exemption that was originally included" demonstrates a lack of narrow tailoring. 2021 WL 4734404, at *9.

In *Dahl*, as is true here, the court found that the university failed strict scrutiny under the narrow tailoring prong:

> the University falters on the narrow tailoring prong. For one, public health measures are not narrowly tailored if they allow similar conduct that creates a more serious health risk. That is the case at the University, which allows non-athletes—the vast majority of its students—to remain unvaccinated. One need not be a public health expert to recognize that the likelihood that a student-athlete contracts COVID-19 from an unvaccinated non-athlete with whom she lives, studies, works, exercises, socializes, or dines may well meet or exceed that of the athlete contracting the virus from a plaintiff who obtains a religious exemption to participate in team activities. For another, narrow tailoring is unlikely if the University's conduct is "more severe" than

that of other institutions. **To that point, several other universities grant exemptions from their COVID-19 mandates.**

2021 WL 4618519, at *5 (emphasis added) (cleaned up)

In fact, despite Maine's contentions that there are no alternatives to a vaccine mandate that prohibits religious exemptions, healthcare providers in Maine (and across the country) are regularly providing religious accommodations to healthcare workers. An employee of the Department of Veterans Affairs at the VA Maine Healthcare System in Augusta was merely required to check a box requesting a religious exemption. employee who is employed as Chief Chaplin of Service at the VA Maine Healthcare System in Augusta notes that the VA "permits and freely grants exemptions and accommodations to healthcare employees with sincerely held religious objections to mandatory vaccinations." (Dkt. 57-2 ¶ 5.) This employee was granted an accommodation of wearing a mask while at work, and he is "permitted to carry out [his] duties and responsibilities to the same extent as always," including interacting with patients "both with COVID and without COVID." (*Id.* ¶ 10.)

Another VA employee was likewise given an accommodation in Maine. (Dkt. 57-2, ¶¶ 2–6.) That employee's experience highlights the dichotomous treatment of healthcare workers in Maine. Her VA exemption allowed her to "continue all of [her] previous duties and responsibilities, including working on-site, interacting with colleagues, and providing quality and safe care to [her] patients," and her accommodation only requires that she wear a mask and submit to testing twice

weekly. (*Id.* ¶ 10.) This same employee, however, was also a per diem employee at Eastport Memorial Nursing Home in Maine where she requested a religious accommodation similar to her VA accommodation but was informed that such accommodations were not available under Maine law, and her employment was discriminatorily terminated. (*Id.* ¶ 11.)

The availability and workability of accommodations for patient-facing healthcare workers with sincerely held religious objections to COVID-19 vaccination is evident from sea to shining sea, at large employers and small. (Dkt. 57-3 – 57-33 (demonstrating accommodations granted to healthcare employees in Maine, Oregon, California, Washington, New Mexico, Missouri, Texas, Wisconsin, Minnesota, Illinois, Colorado, Michigan, Ohio, Pennsylvania, Delaware, Maryland, and Florida.) Maine's contention that it simply cannot provide any reasonable accommodation to the sincerely held religious beliefs of healthcare workers in Maine is demonstrably false. Indeed, the list of healthcare providers granting exemptions across the country involves (a) top education and research hospitals, including University of Colorado, University of Chicago, University of Maryland, Temple University, (b) some of the largest healthcare providers in the nation, including Kaiser Permanente, Trinity Health, and Advocate Aurora Healthcare with hundreds of thousands of employees providing patient-facing care and accommodating the subset of those with sincere religious beliefs, and (c) mid-size

and smaller healthcare providers that have also readily accommodated patient-facing personnel with sincere religious beliefs. (*See* Dkt. 57-3 – 57-33.). *See Dr. A*, 2021 WL 4734404, at *9 (regulation not narrowly tailored if other jurisdictions have proven less restrictive alternative available).

And, this point is critical because the government must show it "**seriously undertook to address the problem with less intrusive tools readily available to it**," meaning that it "**considered different methods that other jurisdictions have found effective**." *McCullen v. Coakley*, 134 S. Ct. 2518, 2539 (2014) (emphasis added). *See also Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (same). And the Governor must "show either that **substantially less-restrictive alternatives were tried and failed**, or that the **alternatives were closely examined and ruled out for good reason**," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016) (emphasis added), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interest, not simply that the chosen route was easier.'" *Agudath Israel*, 983 F.3d at 633 (quoting *McCullen*, 134 S. Ct. at 495). **If 49 other states, the Department of Veterans Affairs, and a who's-who of excellent healthcare providers can accommodate their employees' religious beliefs and still advance their interests in protecting patients, Maine can and must do the same.** Maine has brought forth no record facts to even suggest, let alone prove, that the COVID situation in Maine is so much worse than the rest of the

country, to justify its lonesome, draconian approach. In fact, the Governor has admitted quite the opposite.[1]

> **Despite having the oldest median age population in the country, Maine, adjusted for population, ranks third lowest in total number of cases and fourth lowest in number of deaths from COVID-19 from the start of the pandemic, according to the U.S. CDC.**

(*See* dkt. 34-1 at 3, *Mills Administration Provides More Time for Health Care Workers to Meet COVID-19 Vaccination Requirement* (emphasis added).) This is a solution in search of a problem.

Indeed, a VA employee who works 9 miles from Defendant MaineGeneral in Augusta has been given an accommodation, yet Plaintiffs in the same hospital somehow lost their constitutional rights on that short 10-minute drive. If this is "narrow tailoring," that term means nothing.

## II.     PLAINTIFFS ARE SUFFERING IRREPARABLE HARM.

While it is generally true that a loss of employment does not constitute irreparable harm, **that ignores the seminal First Amendment questions before the Court**. And there can be no dispute that State Defendants' substantial burden on Plaintiffs' religious exercise constitutes irreparable harm as a matter of law. As the Supreme Court has held time and again, Plaintiffs "are irreparably harmed by the

---

[1] Particularly troubling, too, was the district court's failure to recognize that Defendants carry the burden on narrow tailoring. (PI Order at 22-23). But, there is no question that Defendants **alone** bear the burden to demonstrate narrow tailoring. *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

loss of free exercise rights for even minimal periods of time." *Tandon*, 141 S. Ct. at 1297. Indeed, "**[t]here can be no question that the challenged [mandate], if enforced, will cause irreparable harm**." *Catholic Diocese*, 141 S. Ct. at 67 (emphasis added). Plaintiffs' constitutional injuries in the instant matter are presumed irreparable harm. *See, e.g.*, *Sindicator Puertorriqueno de Trabajaddores v. Fortuno*, 699 F.3d 1, 11 (1sr Cir. 2012) ("irreparable injury is presumed" in First Amendment cases). Put simply, "a violation of plaintiffs' constitutional right, and in particular, a violation of First Amendment rights, constitutes irreparable harm, *per se*." *Westchester Legal Servs., Inc. v. Westchester Cnty.*, 607 F. Supp. 1379, 1385 (S.D.N.Y. 1985).

Defendants' collective false reduction, that Plaintiffs face only the loss of a job rather than the unconscionable loss of First Amendment rights at the hand of State Defendants, must be rejected. The impact of Maine's far-reaching mandate cannot be understated. Plaintiffs cannot simply go from one employer who unlawfully discriminates, and get a job at a different employer to feed their families while their legal claims are pending. Maine has essentially ensured the Plaintiffs **cannot work anywhere in the entire State**. If that's not irreparable harm, the word has no meaning. Indeed, "**[t]he harm [Plaintiffs] would suffer is not only, as [Defendants] argue[], the loss of [their] job[s]** *per se,* **but also the penalty for exercising [their First Amendment] rights. The chilling effect of that penalty**

**cannot be adequately redressed after the fact**." *Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 4 (1st Cir. 1987) (emphasis added).

Indeed, where the Governor's mandate "conflicts with plaintiffs' and other individuals' federally protected right to seek a religious accommodation from their individual employers," injunctive relief is appropriate. *Dr. A*, 2021 WL 4734404, at *10. As the Sixth Circuit held, "[e]nforcement of the [government's COVID-19 vaccine mandate] would deprive plaintiffs of their First Amendment rights, an irreparable injury." *Dahl*, 2021 WL 4618519, at *6.

## III. PLAINTIFFS SATISFY THE OTHER IPA REQUIREMENTS.

As *Dr. A* recognized when it enjoined New York's similar scheme, "the public interest lies with enforcing the guarantees enshrined in the Constitution and federal anti-discrimination laws." *Dr. A*, 2021 WL 4734404, at *10. Indeed, "**[p]roper application of the Constitution . . . serves the public interest [because] it is always in the public interest to prevent a violation of a party's constitutional rights**." *Dahl*, 2021 WL 4618519, at *6 (emphasis added).

Additionally, "**the balance of the hardships clearly favors plaintiffs**." *Id.* (emphasis added). Indeed, as there, "defendants have not shown that granting the same benefit to religious practitioners that was originally included in the August 18 Order would impose any more harm—especially when Plaintiffs have been on the front lines of stopping COVID for the past 18 months while donning PPE and

exercising other proper protocols in effectively slowing the spread of the disease." *Id.* The IPA should issue today.

## CONCLUSION

Because the Governor's COVID-19 vaccine mandate completely removes any protections for Plaintiffs' sincerely held religious beliefs and subjects them to especially harsh treatment, it violates the First Amendment and should be immediately enjoined pending this appeal, to avoid irreparable harm.

Respectfully submitted,

Dated: October 14, 2021

/s/ Daniel J. Schmid
Mathew D. Staver, *Counsel of Record*
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@LC.org
hmihet@LC.org
rgannam@LC.org
dschmid@LC.org
*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). Not counting the items excluded from the length by Fed. R. App. P. 32(f), this document contains 5,168 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.


/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF filing system and therefore service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

/s/ Daniel J. Schmid
Daniel J. Schmid
*Attorney for Plaintiff-Appellant*